UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL LOPEZ REYES,<br><br>Petitioner,<br><br>v.<br><br>ERIK BONNAR, et al.,<br><br>Respondents. | Case No. 18-cv-07429-SK<br><br>**ORDER REGARDING PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER**<br><br>Regarding Docket No. 9 |

Petitioner, Raul Lopez Reyes ("Petitioner"), has filed a petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2241. Petitioner is in Respondent's custody pursuant to an order by an immigration judge denying him release on bond and denying him the opportunity to have a second hearing to determine whether to release him on bond. Petitioner contends that the immigration judge erred in his determination to not give him another hearing to determine whether to release him on bond, and Petitioner moves for a temporary restraining order to compel another hearing or to be released during the pendency of his proceeding for removal in the immigration courts. Having considered the parties' papers, relevant legal authority, and the record in this case, the Court HEREBY GRANTS IN PART and DENIES IN PART Petitioner's motion for a temporary restraining order and ORDERS that the immigration judge re-consider the request for a second bond hearing, according to the parameters below, within 15 days or otherwise release Petitioner from custody.

**BACKGROUND**

Petitioner is a native of Guatemala, who has lived in the United States for almost thirty years. (Dkt. 1 (Petition), ¶ 2.) He filed for asylum in 1993. (*Id.*, ¶ 24.) In 1998, he was ordered removed *in absentia*. He lacked notice of the removal proceeding. (*Id.*)

He has numerous close family members, including a daughter who is a United States

citizen, who lives in the Bay Area. (*Id*., ¶ 2.) He has been seeking relief in immigration proceedings since 1993. (*Id*.)

**A.    Events Prior to Initial Bond Hearing.**

On February 6, 2008, Petitioner pled guilty to an assault committed in September 2007. He was sentenced to 120 days for this felony, but the sentence was suspended. (*Id*., ¶ 26.) Petitioner spent three days in jail for this incident. (*Id*.)

On June 19, 2008, Petitioner was taken into DHS custody based on the *in absentia* removal order. He successfully moved to reopen the removal proceedings and was released from DHS custody on a bond on July 29, 2008. (*Id*., ¶ 27.) His matters for asylum and removal are still being processed. (*Id*., ¶¶ 27-31.)

Petitioner suffered some personal hardships and began to drink alcohol more than he had previously. (*Id*., ¶ 33.) He was arrested three times for driving under the influence ("DUI"). The first time was on May 30, 2010; the second time was on September 7, 2014; and the third time was on May 12, 2016 and included a conviction for giving false information to a police officer and driving on a suspended license. (*Id*., ¶ 33.) All three convictions were misdemeanors. (*Id*.) Petitioner was sentenced to a total of 262 days for all three convictions but was incarcerated for only six weeks total. (*Id*.)

Petitioner has been detained in the physical custody of Respondents and the Department of Homeland Security ("DHS"), United States Immigration and Customs Enforcement ("ICE") since he presented himself to check in with ICE on March 22, 2017. (*Id*., ¶ 3.)

One month after arriving at the Contra Costa West County Detention Facility, Petitioner signed up for a substance-abuse and behavioral education program called "DEUCE." Petitioner was unable to enroll in the program until August 2017. (*Id*., ¶ 36.) Approximately three weeks later, Petitioner had a bond hearing on September 14, 2017. (*Id*., ¶ 34.)

**B.    Initial Bond Hearing.**

At the hearing, Petitioner testified that he was not an alcoholic. (*Id*., ¶ 34.) He also testified that the court-ordered rehabilitation classes he had attended were not effective. He made no commitment to join an impatient program upon release. (*Id*.)

Dr. Susan Wilde, a psychologist, testified at the hearing as an expert. (*Id*., ¶ 36.) In her opinion, Petitioner had an alcohol use disorder but was amenable to rehabilitation. (*Id*.) She

further testified that she believed that the court-ordered DUI classes that Petitioner took after his DUI convictions were ineffective, but that the DEUCE program, which Petitioner had just started attending, was "excellent" and often led individuals towards on-going rehabilitation. (*Id*.) Petitioner also submitted a declaration from his wife which did not address any commitment by her to support Petitioner in abstaining from alcohol. (*Id*., ¶ 37).

The immigration judge rejected Petitioner's request for release on bond. She stated orally that her decision was based on Petitioner's extensive criminal history, specifically his three convictions for DUI. (*Id*., ¶ 38.) She further stated that it was unclear if Petitioner understands that he has a drinking problem. She found that DHS had shown by clear and convincing evidence that Petitioner was a danger to persons and property in the United States and was not eligible for bond. (*Id*.)

The IJ issued a "bond memorandum" on October 24, 2017, in which she noted that Dr. Susan Wilde testified as an expert that she (Dr. Wilde) believed Petitioner has a problem with alcohol and was amenable to rehabilitation if he entered an appropriate program. (*Id*., ¶ 39.) She also summarized that Petitioner was convicted of a felony and three DUI offenses. The IJ stated that she considered Petitioner's criminal history and his equivocal testimony regarding whether he needed help or intended to stop drinking. (*Id*.) She concluded that Petitioner's "recent and repeated criminal history involving alcohol" showed that he was a current danger to the community. (*Id*.) On appeal, on February 27, 2018, the Board of Immigration Appeals ("the BIA") affirmed the immigration judge's determination that Petitioner was a danger to the community. (*Id*., ¶ 40.)

**C.    Events After the Initial Bond Hearing.**

On June 9, 2018, Petitioner's daughter demonstrated outside the detention facility and garnered national attention. (*Id*., ¶¶ 6, 43.) Fewer than two weeks later, on June 22, 2018, Petitioner was transferred to a detention facility in Aurora, Colorado, more than 1200 miles from his family and *pro bono* counsel. (*Id*., ¶¶ 6, 44.) Petitioner's family members formerly visited him regularly, at least once a month, but they have been unable to visit him since the transfer. (*Id*., ¶ 50.) His attorneys also have not been able to visit him and cannot obtain expeditious signatures since his transfer. (*Id*.)

3

On July 26, 2018, a California court heard testimony regarding the circumstances of Petitioner's conviction for assault and reduced the sentence from a felony to a misdemeanor. (*Id.*, ¶ 52.) On August 30, 2018, the government filed an unopposed motion with the Ninth Circuit, seeking a remand to the BIA to determine whether the reduction of his only felony conviction to a misdemeanor enabled him to pursue cancelation of his removal. (*Id.*, ¶ 53.) The government cited the recent reduction of Petitioner's only criminal conviction and apparent mistakes in the BIA's prior denial of his asylum claim. (*Id.*, ¶ 2.) In its motion to remand, the government also requested that the BIA reconsider incorrect factual findings regarding Petitioner's family-based asylum claim. (*Id.*, ¶ 53.)

On August 31, 2018, the Ninth Circuit remanded his case to the BIA. (*Id.*, ¶ 54.) On November 19, 2018, Petitioner filed a brief with the BIA in which he argues that the IJ erred in denying him asylum, withholding, and "CAT relief."[1] (*Id.*) The next day, Petitioner also filed a motion to remand with the BIA, in which he: (1) argued that new evidence corroborates his eligibility for asylum, withholding, and "CAT relief"; (2) provided further argument in support the need to remand for consideration of his cancellation application; and (3) argued that remand is now warranted to consider his eligibility for voluntary departure. (*Id.*) On November 27, 2018, the BIA issued a briefing schedule in relation to the Ninth Circuit's recent remand. (*Id.*) Petitioner alleges that this litigation regarding his efforts to pursue immigration related relief before the BIA may take years. (*Id.*, ¶ 2.)

**D.      Petitioner's Request for Another Bond Hearing Based on Changed Circumstances.**

After the remand, Petitioner requested another bond hearing in September 2018. (*Id.*, ¶ 4.) Petitioner moved for the second bond hearing pursuant to 8 C.F.R. § 1003.19(e), based on changed circumstances. (*Id.*, ¶ 14,) His motion included new evidence regarding the reduction of his sentence, the remand of his case, his rehabilitation, his post-release plan, and his community and familial support. (*Id.*, ¶ 55.)

In support of his request, Petitioner submitted a declaration in which he took responsibility for his actions and detailing his changed circumstances. In this declaration, Petitioner stated for

---

[1] Although Petitioner does not define this term, it appears to refer to the Convention against Torture, which can lead to withholding from removal or deferral of removal. 8 C.F.R. §§ 208.16; 208.17

4

the first time that he understood he had an alcohol use disorder and committed to entering into an inpatient rehabilitation program upon release, following Dr. Wilde's recommendation she made at his first bond hearing the year before. (*Id*., ¶ 56.) He also committed for the first time to pursue long-term mental health treatment to learn to deal with his trauma in healthy and effective ways. (*Id*.)

Additionally, he submitted his certificate of completion for phase one of the DUECE program and noted his participation in the Men and Women of Purpose support group at the West County Detention Facility. (*Id*., ¶ 57.) He also submitted an updated psychological evaluation from Dr. Wilde dated September 12, 2018, in which she found that he had been clean from alcohol while in detention for many months and had already gone through withdrawal and developed an ability to deal with stressful circumstances without alcohol. (*Id*.; Dkt. 11, ¶ 53.) She further stated that since his last bond hearing, he spent over a year continuing to develop sober strategies to deal with stressful situations. (Dkt. 11, ¶ 53.) He also submitted a comprehensive and detailed release plan that he developed with the assistance of an experienced case worker, which included the following:

(1) a plan for enrolling in medical insurance once he returned to California;

(2) a plan incorporating the recommendations made in the psychological evaluation;

(3) a plan for obtaining inpatient treatment through Contra Costa ACCESS, including letters from staff at Contra Costa Mental Health and Alcohol and Drug;

(4) a plan to receive ongoing mental health services, with letters from two mental health practitioners who have agreed to provide Petitioner with psychotherapy if he is released;

(5) a plan for Petitioner to attend two ongoing support groups, Vive y Deja Vivir (a Spanish-speaking Alcoholics Anonymous group that meets every evening close to his residence) and Cornerstone San Francisco's Bilingual Men's Recovery Group, led by Pastor Robert León (with a letter from Pastor León);

(6) a plan for ongoing support services for Petitioner's family including faith-based support through the First Congregational Church of Berkeley, financial support through Contra Costa County Season of Sharing (a non-profit dedicated to one-time financial assistance to families in need), and Community Action Marin's Family Support Group

5

(the group leader has confirmed that the family will be able to begin participation immediately); and

(7) a step-by-step plan developed by the case worker in coordination with Petitioner and his family for the logistics of Petitioner's release and his transition into alcohol treatment. (Dkt. 1, ¶¶ 58-65.)

This new plan differed from the release plan Petitioner had provided at his initial bond hearing. (*Id*., ¶ 66.) His initial plan for rehabilitation only included a verbal confirmation from one rehabilitation center that was willing to complete an intake with Petitioner. The initial plan did not include any additional services coordinated, planned or mentioned, and there was no plan if that particular center did not believe Petitioner was the right fit or in need of their services or how Petitioner would continue his rehabilitation after an initial inpatient rehabilitation program. The initial plan did not include any plan for Petitioner to receive mental health services. (*Id*.)

In his renewed plan, Petitioner provided twenty-two declarations and letters from his close friends and family offering to assist Petitioner in concrete ways. (*Id*., ¶ 67; Dkt. 11 (Declaration of Frances Kreimer), ¶ 49.) His family members made new commitments to support him in his commitment to sobriety in several ways including providing rides, not having alcohol at family functions, and not having alcohol at home. Petitioner's wife submitted a new declaration in which she stated: "I am willing to do whatever is necessary to ensure that [Petitioner] never drinks and drives again." (Dkt. 1, ¶ 67.)

Petitioner also submitted letters of support and signed petitions from the community, including members of his church and his "family accompaniment team" at First Congregational Church of Berkeley. (*Id*., ¶ 68; Dkt. 11, ¶ 52.) Those individuals promised to draw on personal contacts to make sure that Petitioner has access to an Alcoholics Anonymous support group and a sponsor and to drive him to meetings if needed. (*Id*.) In contrast, Petitioner did not have such a robust social network and support system at his prior hearing. (*Id*.)

On September 24, 2018, DHS submitted its opposition to Petitioner's request for another bond hearing, which included only a print out of Petitioner's criminal history and the criminal court docket of Petitioner's assault conviction. (*Id*., ¶ 69.)

On September 25, 2018, an IJ denied Petitioner's request for another hearing. (*Id*., ¶¶ 4, 70.) His denial stated only that the court agreed with the reasons stated in opposition to the

6

motion. (*Id*., ¶ 70.)

On October 25, 2018, Petitioner appealed the IJ's order denying his motion for a new bond hearing. (*Id*., ¶ 71.) In response, the IJ issued a memorandum providing his conclusions on Petitioner's motion for a new bond hearing. The IJ stated: "evidence that [Petitioner] has sought treatment for his drinking problem, a year of additional sobriety and a release and rehabilitation plan are not a material change in circumstances that warrant another custody hearing." (*Id*.) The IJ noted that Petitioner had three convictions for DUI, that Petitioner's family members were in the car during one of these incidents, and that Petitioner's "most recent arrest occurred while he was still completing his court ordered alcohol treatment." (*Id*.)

Petitioner appealed the IJ's denial of his request for a bond hearing and filed his appeal brief with the BIA on November 28, 2018. (*Id*., ¶¶ 14, 72.) Petitioner alleges on information and belief that the BIA can take up to five months to adjudicate this appeal. (*Id*., ¶ 14.)

**E.    Petitioner's Allegations of Irreparable Harm.**

Petitioner alleges that he would suffer irreparable harm if he were required to exhaust his administrative remedy because each day he remains in detention without a bond hearing is unlawful and causes him harm that cannot be repaired. (*Id*., ¶ 13.) He further alleges that he will suffer psychological and emotional conditions that are exacerbated by his detention. (*Id*., ¶ 15.) He has been diagnosed with major depression, panic disorder, post traumatic stress disorder ("PTSD"). His symptoms from these conditions are exacerbated by his detention. He also suffers from chronic back pain, which at times is debilitating. The conditions of his incarceration exacerbate his back pain. (*Id*., ¶ 15.) Petitioner does not get adequate medical treatment while in detention. (*Id*.) Petitioner also recently discovered that his brother is entering hospice treatment for cancer. (*Id*., ¶ 16.) Petitioner is missing the last days of his brother's life while being in detention. (*Id*.)

Petitioner's family is also suffering from his detention. (*Id*., ¶ 16.) His wife and daughter have both been diagnosed with PTSD and depression, and his daughter suffers from panic disorder as well. (*Id*.) The symptoms of these conditions are greatly exacerbated by Petitioner's detention. (*Id*.)

/ / /

/ / /

# ANALYSIS

**A. Temporary Restraining Order Standard.**

The standard for issuing a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A preliminary injunction is an "extraordinary remedy." *Winter v. Nat. Res. Defense Council*, 555 U.S. 7, 24 (2008). In order to obtain a preliminary injunction a plaintiff must establish (1) "that he is likely to succeed on the merits," (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in his favor," and (4) "that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Alternatively, "if a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (internal citation and quotation marks omitted). A "serious question" is one on which the movant "has a fair chance of success on the merits." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984) (internal citation omitted). Under the Ninth Circuit's "sliding scale" approach, "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012) (citations omitted).

Additionally, where, as here, Petitioner seeks affirmative relief that would alter the status quo, "courts should be extremely cautious." *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1319 (9th Cir. 1994).

**B. Exhaustion of Administrative Remedies.**

Respondents argue that the court should deny Petitioner's application for temporary restraining order because he has not exhausted his administrative remedies before the BIA. Petitioner's appeal to the BIA of the IJ's September 2018 decision that Petitioner is not entitled to a bond hearing remains pending.

The Ninth Circuit requires, as a prudential matter, that petitioners for *habeas corpus* exhaust available judicial and administrative remedies before seeking relief under in a district court. *Castro-Cortez v. I.N.S.*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006); *see also Rojas-Garcia v. Ashcroft*, 339 F.3d 814, 819 (9th Cir. 2003) (a "petitioner must exhaust administrative remedies before raising the constitutional claims in a habeas petition when those claims are reviewable by the BIA on appeal").

However, a court may waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (citation and quotation marks omitted)). Courts in this district have waived exhaustion when immigration petitioners have challenged their inability to receive a bond hearing on their detention through a habeas petition. *See*, *e.g.*, *Cortez v. Sessions*, 318 F. Supp. 3d 1134, 1138-39 (N.D. Cal. 2018); *Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1003-04 (N.D. Cal. 2018).

In *Cortez v. Sessions*, 318 F. Supp. 3d 1134, 1138-39 (N.D. Cal. 2018), the court did not require administrative exhaustion. The court reasoned that the BIA appeal may take four months or longer to adjudicate, that detention creates substantial challenges in preparing for a merits hearing on his immigration status, and that the petitioner "suffers potentially irreparable harm every day that he remains in custody without a hearing, which could ultimately result in his release from detention." *Id*. (quoting *Pulido v. Sessions*, No. C 17-03683 WHA, Docket No. 12, slip opinion 3-4 (N.D. Cal. Nov. 21, 2017) (waiving exhaustion requirement)).

Similarly, in *Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1003-04 (N.D. Cal. 2018), the court held that the administrative exhaustion requirement should be waived. The court noted that the petitioner filed a BIA appeal that had not yet been set for hearing and that she had asserted the BIA appeal may take four months or more to adjudicate. In light of the fact that she had lived in the United States for almost two decades, had a pending criminal case that her detention

9

rendered more difficult to defend, and that she had a child for whom she was the primary caregiver, the court concluded that she and her child would be irreparably harmed by further delay in providing her with a detention proceeding that comports with due process. The court noted that other courts in this district have held that "the potential for irreparable harm to Petitioner, in the form of continued unlawful denial of [bond] hearings for potentially four months or more," was so great that "waiver of the exhaustion requirement [was] appropriate." *Id.* (citing *Villalta v. Sessions*, 2017 WL 4355182, at *3 (N.D. Cal. Oct. 2, 2017); *Cortez v. Sessions*, 2018 WL 1510187, at *3 (N.D. Cal. Mar. 27, 2018); *Ramos v. Sessions ("Ramos I")*, 2018 WL 905922, at *3 (N.D. Cal. Feb. 15, 2018)); *but see Resendiz v. Holder*, 2012 WL 5451162, *3 (N.D. Cal. Nov. 7, 2012) (finding no exception to prudential exhaustion requirement because petitioner did not timely appeal with BIA).

Here, Petitioner argues that the prudential exhaustion requirement should be waived because he is suffering irreparable harm by his allegedly unlawful detention. In his reply brief, Petitioner makes the additional argument that he would suffer irreparable harm if his brother dies before Petitioner is released. (Dkt. 12 (Declaration of Raul Lopez Reyes), ¶ 11 ("[M]y brother is extremely sick and could die in a matter of days or weeks and has entered hospice. . . . My brothers and sisters and I are very close, and it makes me extremely sad to know that he could die any day and I may not be able to see him to say goodbye.").) He further argues, with respect to irreparable harm, that his detention has negatively affected his mental and physical health, as well as the mental health of his family, and that will continue. Additionally, further detention adversely affects his ability to prepare for his immigration case.

The Court finds that administrative exhaustion is not required based on irreparable harm. If his brother should die before Petitioner has an opportunity to have a bond hearing before an immigration judge, Petitioner will forever lose his opportunity to see his brother again. Additionally, waiting for the BIA appeal, which may take up to five months to adjudicate, "will cause him irreparable harm by prolonging his detention without a hearing, which could ultimately result in his release from detention." *Cortez*, 318 F. Supp. 3d at 1138-39. Although these effects from irreparable harm are the same type of harm any person who is detained may suffer, they are

10

irreparable in nature.

**C. Likelihood of Success on Merits on Habeas Petition.**

*Habeas corpus* relief is appropriate when a person "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). The Immigration and Nationality Act ("INA") provides a "complex statutory framework of detention authority" codified at 8 U.S.C. §§ 1226 and 1231. *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008). Where a noncitizen falls within the statutory scheme "can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Id.*

Petitioner is being detained under 8 U.S.C. § 1226(a). Pursuant to that provision, "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). "After an alien is detained, the DHS district director makes an initial custody determination and may allow the alien's release on bond. *Prieto-Romero*, 534 F.3d at 1058 (citing 8 C.F.R. § 236.1(d)). If, where here, an alien is denied bond, he may request another bond hearing "upon a showing that the alien's circumstances have materially changed since the prior bond determination." 8 C.F.R. § 1003.19(e).

The Attorney General has discretionary judgment under 8 U.S.C. § 1226 and that judgment is not subject to judicial review. 8 U.S.C. § 1226(e); *see also Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018) (Section 1226(e) "precludes an alien from challenging a discretionary judgment by the Attorney General or a decision that the Attorney General has made regarding his detention or release.") (quotation marks and citation omitted). However, section 1226(e) "does not strip a district court of its traditional habeas jurisdiction, 'bar constitutional challenge[s]' or preclude a district court from addressing a habeas petition 'challeng[ing] the statutory framework that permits [the petitioner's] detention without bail.'" *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011) (quoting *Demore v. Kim*, 538 U.S. 510, 516-17 (2003). Thus, courts retain "habeas jurisdiction over constitutional claims or questions of law." *Singh*, 638 F.3d at 1202.

**1. Bond Hearing Based on Materially Changed Circumstances.**

Petitioner argues that the IJ violated the law and Petitioner's right to due process in

11

denying him the opportunity to have a second bond hearing. Pursuant to 8 C.F.R. § 1003.19(e), Petitioner may obtain a new bond hearing upon a showing that his "circumstances have materially changed since the prior bond determination." 8 C.F.R. § 1003.19(e). The Court has jurisdiction to review the IJ's discretionary bond denial only "where that bond denial is challenged as legally erroneous or unconstitutional." *Kharis v. Sessions*, 2018 WL 5809432, *4 (N.D. Cal. November 6, 2018). "[A] district court has jurisdiction to review mixed questions of law and fact," but "it must be careful not to encroach upon 'the IJ's discretionary weighing of the evidence.'" *Id*. at *5 (quoting *Slim v. Nielson*, 2018 WL 4110551, at *4 (N.D. Cal. Aug. 29, 2018)). "Petitioner may not create the jurisdiction that Congress chose to remove simply by cloaking an abuse of discretion argument in constitutional garb." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1271 (9th Cir. 2001.) Nevertheless, courts are not barred from concluding that the evidence before the IJ failed, as a matter of law, to prove the requisite showing. *Kharis*, 2018 WL 5809432, *5; *see also Slim*, 2018 WL 4110551, * 4-5 (distinguishing between an unreviewable challenge to the IJ's discretionary weighing of factors and a permissible challenge to the "quantum of evidence supporting the IJ's conclusion."). Here, the first issue is whether the IJ failed as a matter of law in determining that Petitioner did not show that his circumstances had materially changed.

Additionally, where the IJ misinterpreted or failed to consider probative evidence, the Court may review such errors under its *habeas* review. *See Ramos v. Sessions*, 293 F. Supp. 3d 1021, 1033 (N.D. Cal. 2018) (finding "IJ legally erred because she did not fully consider the evidence before her," including that the petitioner demonstrated significant changed circumstances such as meaningful rehabilitation as shown by letters from community members, petitioner's testimony showing dedication to sobriety, and by entering DUI therapy which differed meaningfully from previous therapy); *Obregon v. Sessions*, 2017 WL 1407889, *7 (N.D. Cal. April 20, 2017) (finding legal error where IJ misrepresented some of the petitioner's evidence, failed to "engage with any of the details" with the petitioner's prior convictions for DUI, and failed to address the steps the petitioner took to get effective treatment).

At the time of his initial hearing, Petitioner's criminal history included one felony assault conviction and three convictions for misdemeanor DUI, the last one being committed just sixteen

12

months before the bond hearing. (Dkt. 1, ¶ 33.) The recency of his DUIs was a factor the IJ considered in finding him not eligible for a bond. (*Id*., ¶ 39.) At his initial hearing, Petitioner was equivocal about whether he needed help and/or intended to stop drinking. That unwillingness to accept responsibility was another factor the IJ found that supported her decision. (*Id*., ¶¶ 38, 39.) Moreover, a psychologist testified at that hearing that the court-ordered DUI programs Petitioner had taken after his convictions were ineffective. (Dkt. 1, ¶ 36.)

Petitioner submitted substantial evidence in support of his motion for a new bond hearing to show that his circumstances had materially changed since his initial bond hearing in September 2017, including: (1) his unequivocal acceptance that he has a drinking problem and its dangers; (2) a certificate from completing the first phase of a DUI program that the psychologist testified was "excellent;" (3) his commitment to enter into an inpatient rehabilitation program upon release in compliance with the recommendation of the psychologist who testified at the initial hearing; (4) his commitment to pursue long-term mental health treatment to learn to deal with trauma in healthy and effective ways; (5) robust and committed family and community support for his sobriety and mental health; (6) an updated psychological evaluation stating that he had been clean from alcohol for many months, had already gone through withdrawal, and had developed an ability to deal with stressful circumstances without alcohol; and (7) the reduction of his felony conviction to a misdemeanor. (Dkt. 1, ¶¶ 55-68.) Moreover, his last DUI was committed 28 months before he filed the motion for a new bond hearing, in contrast to just 16 months before his initial hearing.

The IJ summary dismissed Petitioner's motion, stating that Petitioner's:

> evidence that he has sought treatment for his drinking problem, a year of additional sobriety and a release and rehabilitation plan are not a material change in circumstances that warrant another custody hearing. . . . Though it is commendable that [Petitioner] is now willing to seek treatment, that evidence presented is not a material change that warrants a new custody hearing.

(Dkt. 11-1 at 86.)

The issue before the Court is whether the IJ erred *as a matter of law* in finding that Petitioner failed to show that his circumstances had materially changed. On that issue, the Court

13

cannot find that the IJ erred as a matter of law in that finding. However, the reason that the Court cannot find that the IJ erred is that the IJ's reasoning is not clear from the Order (Dkt. 11-1 at Exs. H, J). The Order dated November 1, 2018 in which the IJ denied the request for a second bond hearing does not discuss all relevant facts. (Dkt. 11-1 at Ex. J). The Order dated November 1, 2018 does not refer to the other changes in circumstances: the reduction in Petitioner's earlier conviction from a felony to misdemeanor, the increasing remoteness of his convictions for DUI, the remand of Petitioner's case from the Ninth Circuit Court of Appeals to the BIA, the fact that Petitioner completed the first phase of a DUI therapy which differed meaningfully from his previous court-ordered therapy, and the psychological evaluation finding that Petitioner had learned effective coping mechanisms. It is not clear if the failure to address all facts indicates that the IJ did not consider them or if the IJ merely decided not to address them in writing. The Court is reluctant to second-guess the IJ in determining whether these additional facts constitute a material change in circumstances such that a new bond hearing is required. However, the Court finds that the IJ should re-consider all facts to determine whether there is a material change in circumstances to warrant a new bond hearing.

### 2. Bond Hearing Required by Due Process.

The second issue is whether Petitioner is entitled to a second bond hearing under the Constitution simply because of the passage of time. Petitioner argues that, even if he cannot show a change in circumstances, he is entitled to a second bond hearing simply because he has been detained for so long without a second hearing.

The Supreme Court in *Jennings* made clear that Petitioner is not statutorily entitled to periodic bond hearings under 8 U.S.C. 1226(a), but the Supreme Court did not address whether Fifth Amendment's Due Process Clause of the Constitution requires additional bond hearings at six-month intervals. In the absence of binding authority establishing a "categorical right to a periodic bond hearing, the Court must conduct an individualized due process analysis pursuant to the conventional *Mathews v. Eldridge*, 424 U.S. 319 (1976) factors." *Soto v. Sessions*, 2018 WL 3619727, * (N.D. Cal. July 30, 2018); *see also Viramontes-Gomez v. Nielsen*, 2018 WL 6111015, at *4 (W.D. Wash. Oct. 18, 2018) (applying *Mathews* test to determine if due process required a

bond hearing).

The Fifth Amendment's Due Process Clause forbids the Government to "depriv[e]" any "person . . . of . . . liberty . . . without due process of law." "Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334. To determine the requirements of due process, courts consider (1) the private interest affected, (2) the government's interest, and (3) the value added by alternative procedural safeguards to what has already been provided in the particular situation before the court. *See id.* at 334-35.

### i. Petitioner's Private Interest.

Petitioner's freedom from detention is at stake. "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that Clause protects." *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "[L]iberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Rodriguez v. Marin*, 909 F. 3d 252, 256-57 (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)).

Petitioner has now been detained for twenty-one months, and over a year has passed since his last bond hearing. Petitioner argues that his detention is "prolonged" and thus requires another bond hearing. The Ninth Circuit had held under the cannon of constitutional avoidance, that 8 U.S.C. § 1226(a) required periodic bond hearings every six months to avoid constitutional concerns that arise from prolonged detention. *Rodriguez v. Robbins*, 804 F.3d 1060, 1074 (9th Cir. 2015). However, the Supreme Court recently reversed *Rodriguez* on the grounds that the Ninth Circuit erred in applying the cannon of constitutional avoidance because its interpretation of the statute was implausible. *Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018). The Supreme Court did not preclude the Ninth Circuit from finding that due process, as opposed to the statute, requires periodic bond hearings, *id.* at 851, but the Ninth Circuit has yet to make that finding. The Court need not speculate as to what the Ninth Circuit would consider "prolonged detention" under the Due Process Clause and whether it would hold that a certain length of detention, standing alone, would require an additional bond hearing. It is enough for purposes of this motion to find that Petitioner's detention has been long and that his private interest is strong.

/ / /

15

#### ii. Governmental Interest.

At his initial bond hearing, the IJ concluded that Petitioner was a danger to the community. "Although the government has valid interests in detaining individuals that pose a danger to the community, the Supreme Court has 'upheld preventive detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections.'" *Obregon v. Sessions*, 2017 WL 1407889, \*6 (N.D. Cal. Apr. 20, 2017) (quoting *Zadvydas*, 533 U.S. at 691).

Additionally, the Court notes that the governmental issue at stake in this motion is the ability to detain Petitioner *without providing him with another bond hearing* at this time, not whether the government may continue to detain him. Petitioner proffers that the cost of conducting a bond hearing, to determine whether the continued detention of Petition is justified, is minimal. (Dkt. 10 at 21.) Respondents do not affirmatively contest this point.

The government has an interest in conducting its affairs without interference and in allowing the IJ, who has the clearest access to the facts and witnesses, to assess credibility and judge issues within the context of immigration.

#### iii. Value of Additional Safeguards.

Petitioner has a mechanism for seeking a new bond hearing and to challenge in the BIA the order denying his request for a new bond hearing. Although that process may take four months, that amount of time does not seem unreasonable in the context of this matter. Thus, there are additional safeguards to allow Petitioner to contest the denial of his request for bond hearing.

Given all these facts and given that the Court is ordering the IJ to reconsider the request for a new bond hearing, the Court finds that the Fifth Amendment does not require this Court to order a new bond hearing. Rather, since the IJ did not fully consider all the facts constituting the change in circumstances to determine if there is a "material" change in circumstances, the remedy of an additional review safeguards Petitioner's rights.

### D. Irreparable Harm.

As noted above, Petitioner has alleged irreparable harm in the form of psychological distress and the risk that he might not be able to see his sibling again. Because this type of

irreparable harm is essentially inherent in detention, the Court cannot weigh this strongly in favor of Petitioner for purposes of this request for a temporary restraining order.

**E.     Balance of Equities and Remedy.**

After weighing all these factors, the Court finds that the balance of equities weighs in favor of a limited temporary restraining order to require the IJ to re-consider the request for an additional bond hearing. The Court cannot analyze the IJ's decision not to grant a second bond hearing without a more clearly reasoned opinion in which the IJ considers all the facts that constitute the change in circumstances. To the extent that the IJ erred in failing to consider specific factors, the IJ must do so. However, the IJ must then apply those facts to the law to determine if there has been a *material* change in circumstances. Based on the facts presented here, the Court would find that the change in circumstances is material and would order another bond hearing. However, the Court is not the fact-finder. The Court will allow the IJ an opportunity to clarify the record. After that record is clarified, the Court can then assess whether there is legal error.

Therefore, the Court ORDERS that the IJ must re-consider Petitioner's request for a second bond hearing within fifteen days or release Petitioner. The Court DENIES all other forms of requested relief.

**IT IS SO ORDERED**.

Dated: December 24, 2018

_____
SALLIE KIM
United States Magistrate Judge