UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL LOPEZ REYES,<br><br>Petitioner,<br><br>v.<br><br>ERIK BONNAR, et al.,<br><br>Respondents. | Case No. 18-cv-07429-SK<br><br>**ORDER REGARDING PETITIONER'S MOTION TO ENFORCE OR, IN THE ALTERNATIVE, FOR A TEMPORARY RESTRAINING ORDER**<br><br>Regarding Docket No. 25 |

Petitioner, Raul Lopez Reyes ("Petitioner"), has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner is in Respondent's custody pursuant to an order by an immigration judge ("IJ") denying him release on bond and denying him the opportunity to have a second bond hearing. Petitioner contends that the IJ erred in the determination to not give him another bond hearing.

Petitioner previously moved for a temporary restraining order. The Court granted in part and denied in part that motion and ordered the IJ to reconsider the request for a second bond hearing in accordance with the parameters set by the Court. The IJ reconsidered and again denied Petitioner's request for a second bond hearing, which Petitioner requested because he alleged a material change in circumstances. Petitioner now moves to enforce the Court's prior order or, in the alternative, for a temporary restraining order to require a second bond hearing. Having considered the parties' papers, relevant legal authority, and the record in this case, the Court HEREBY GRANTS Petitioner's motion for a temporary restraining order seeking another bond hearing.

**BACKGROUND**

Petitioner is a native of Guatemala, who has lived in the United States for almost thirty

years. (Dkt. 1 (Petition), ¶ 2.) He filed for asylum in 1993. (*Id*., ¶ 24.) In 1998, he was ordered removed *in absentia*. He lacked notice of the removal proceeding. (*Id*.)

He has numerous close family members, including a daughter who is a United States citizen, who lives in the Bay Area. (*Id*., ¶ 2.) He has been seeking relief in immigration proceedings since 1993. (*Id*.)

**A.      Events Prior to Initial Bond Hearing.**

On February 6, 2008, Petitioner pled guilty to an assault committed in September 2007. He was convicted of this felony and sentenced to 120 days, but the sentence was suspended. (*Id*., ¶ 26.) Petitioner spent three days in jail for this incident. (*Id*.)

On June 19, 2008, Petitioner was taken into DHS custody based on the removal order that had been entered *in absentia*. Petitioner successfully moved to reopen the removal proceedings and was released from DHS custody on a bond on July 29, 2008. (*Id*., ¶ 27.) His asylum and removal matters are still being processed. (*Id.*, ¶¶ 27-31.)

Petitioner suffered some personal hardships and began to drink more alcohol than he had previously. (*Id.*, ¶ 33.) He was arrested three times for driving under the influence ("DUI"). The first time was on May 30, 2010; the second time was on September 7, 2014; and the third time was on May 12, 2016 and included a conviction for giving false information to a police officer and driving on a suspended license. (*Id*., ¶ 33.) All three convictions were misdemeanors. (*Id*.) Petitioner was sentenced to a total of 262 days for all three convictions but was incarcerated for only six weeks total. (*Id*.)

Petitioner has been detained in the physical custody of Respondents and the Department of Homeland Security ("DHS"), United States Immigration and Customs Enforcement ("ICE") since he presented himself to check in with ICE on March 22, 2017. (*Id*., ¶ 3.)

One month after arriving at the Contra Costa West County Detention Facility, Petitioner signed up for a substance-abuse and behavioral education program called "DEUCE." Petitioner was unable to enroll in the program until August 2017. (*Id*., ¶ 36.) Approximately three weeks later, Petitioner had a bond hearing on September 14, 2017. (*Id*., ¶ 34.)

### B. Initial Bond hearing.

At the hearing, Petitioner testified at first that he was not an alcoholic. (*Id*., ¶ 34.) He also testified that the court-ordered rehabilitation classes he had attended were not effective. He made no commitment to join an impatient program upon release. (*Id*.)

Dr. Susan Wilde, a psychologist, testified at the hearing as an expert. (*Id*., ¶ 36.) In her opinion, Petitioner had an alcohol use disorder but was amenable to rehabilitation. (*Id*.) She further testified that she believed that the court-ordered DUI classes that Petitioner took after his DUI convictions were ineffective but that the DEUCE program, which Petitioner had just started attending, was "excellent" and often led individuals towards on-going rehabilitation. (*Id*.) Petitioner also submitted a declaration from his wife which did not address any commitment by her to support Petitioner in abstaining from alcohol. (*Id.*, ¶ 37).

The IJ rejected Petitioner's request for release on bond. She stated orally that her decision was based on Petitioner's extensive criminal history, specifically his three convictions for DUI. (*Id.*, ¶ 38.) She further stated that it was unclear if Petitioner understands that he has a drinking problem. She found that DHS had shown by clear and convincing evidence that Petitioner was a danger to persons and property in the United States and thus was not eligible for bond. (*Id*.)

The IJ issued a "bond memorandum" on October 24, 2017, in which she noted that Dr. Susan Wilde testified as an expert that she (Dr. Wilde) believed Petitioner has a problem with alcohol and was amenable to rehabilitation if he entered an appropriate program. (*Id*., ¶ 39; Dkt. 11-1.) The IJ also noted that Petitioner was convicted of a felony and three DUI offenses. The IJ stated that she considered Petitioner's criminal history and "his equivocal sworn testimony regarding whether he needs help and intends to stop drinking." (*Id*.) She concluded that Petitioner's "recent and repeated criminal history involving alcohol" showed that he is a current danger to the community. (*Id*.) On appeal, on February 27, 2018, the Board of Immigration Appeals ("the BIA") affirmed the IJ's determination that Petitioner is a danger to the community. (Dkt. 1, ¶ 40.)

### C. Events After the Initial Bond hearing.

On June 9, 2018, Petitioner's daughter demonstrated outside the detention facility and

3

garnered national attention. (*Id*., ¶¶ 6, 43.)  Less than two weeks later, on June 22, 2018, Petitioner was transferred to a detention facility in Aurora, Colorado, more than 1200 miles from his family and *pro bono* counsel. (*Id*., ¶¶ 6, 44.)  Petitioner's family members formerly visited him regularly, at least once a month, but have been unable to visit him since the transfer. (*Id*., ¶ 50.)  His attorneys also have not been able to visit him and obtain expeditious signatures since his transfer. (*Id*.)

On July 26, 2018, a California court heard testimony regarding the circumstances of Petitioner's conviction for assault and reduced the sentence from a felony to a misdemeanor. (*Id*., ¶ 52.)  On August 30, 2018, the government filed an unopposed motion with the Ninth Circuit, seeking a remand to the BIA to determine whether the reduction of his only felony conviction to a misdemeanor enabled him to pursue cancelation of his removal. *Id*., ¶ 53.)  The government cited the recent reduction of Petitioner's only criminal conviction and apparent mistakes in the BIA's prior denial of his asylum claim. (*Id*., ¶ 2.)  In its motion to remand, the government also requested that the BIA reconsider incorrect factual findings regarding Petitioner's family-based asylum claim. (*Id*., ¶ 53.)

On August 31, 2018, the Ninth Circuit remanded his case to the BIA. (*Id*., ¶ 54.)  On November 19, 2018, Petitioner filed with the BIA a brief in which he argues that the IJ erred in denying him asylum, withholding, and "CAT relief."[1] (*Id*.)  The next day, Petitioner also filed a motion to remand with the BIA, in which he argued that new evidence corroborates his eligibility for asylum, withholding, and "CAT relief"; that there is a need to remand for consideration of his cancellation application; and that remand is now warranted to consider his eligibility for voluntary departure. (*Id*.)  On November 27, 2018, the BIA issued a briefing schedule in relation to the Ninth Circuit's recent remand. (*Id*.)  Petitioner alleges that this litigation regarding his efforts to pursue immigration related relief before the BIA may take years. (*Id*., ¶ 2.)

---

[1] Although Petitioner does not define this term, it appears to refer to the Convention against Torture, which can lead to withholding from removal or deferral of removal. 8 C.F.R. §§ 208.16, 208.17.

**D.      Petitioner's Request for Another Bond Hearing Based on Changed Circumstances.**

After the remand, Petitioner requested another bond hearing in September 2018.  (*Id*., ¶ 4.) Petitioner moved for the second bond hearing pursuant to 8 C.F.R. § 1003.19(e), based on changed circumstances.  (*Id*., ¶ 14)  His motion included new evidence regarding the reduction of his sentence, the remand of his case, his rehabilitation, his post-release plan, and support from his family and other members of the community.  (*Id*., ¶ 55.)

In support of his request, Petitioner submitted a declaration in which he took responsibility for his actions and detailed his changed circumstances.  In this declaration, Petitioner stated for the first time that he understood he had an alcohol use disorder, and he committed to entering into an inpatient rehabilitation program upon release, following Dr. Wilde's recommendation she made at his first bond hearing the year before.  (*Id*., ¶ 56.)  He also committed for the first time to pursue long-term mental health treatment to learn to deal with his trauma in healthy and effective ways. (*Id*.)

Additionally, he submitted his certificate of completion for phase one of the DUECE program and noted his participation in the Men and Women of Purpose support group at the West County Detention Facility.  (*Id*., ¶ 57.)  He also submitted an updated psychological evaluation from Dr. Wilde dated September 12, 2018, and in that report, Dr. Wilde found that Petitioner had been free from alcohol while in detention for many months and had already gone through withdrawal and developed an ability to deal with stressful circumstances without alcohol.  (*Id*.; Dkt. 11, ¶ 53.)  She further stated that since his last bond hearing, he spent over a year continuing to develop sober strategies to deal with stressful situations.  (Dkt. 11, ¶ 53.)  To address his efforts after release, he also submitted a comprehensive and detailed plan that he developed with the assistance of an experienced case worker, which included the following:

   (1) a plan for enrolling in medical insurance once he returned to California;

   (2) a plan for incorporating the recommendations made in the psychological evaluation;

   (3) a plan for obtaining inpatient treatment through Contra Costa ACCESS, including

         letters from staff at Contra Costa Mental Health and Alcohol and Drug;

   (4) a plan to receive ongoing mental health services, with letters from two mental health

5

practitioners who have agreed to provide Petitioner with psychotherapy if he is released;

(5) a plan for Petitioner to attend two ongoing support groups, Vive y Deja Vivir (a Spanish-speaking Alcoholics Anonymous group that meets every evening close to his residence) and Cornerstone San Francisco's Bilingual Men's Recovery Group, led by Pastor Robert León (with a letter from Pastor León);

(6) a plan for ongoing support services for Petitioner's family including faith-based support through the First Congregational Church of Berkeley, financial support through Contra Costa County Season of Sharing (a non-profit dedicated to one-time financial assistance to families in need), and Community Action Marin's Family Support Group (the group leader has confirmed that the family will be able to begin participation immediately); and

(7) a step-by-step plan developed by the case worker in coordination with Petitioner and his family for the logistics of Petitioner's release and his transition into alcohol treatment.  (Dkt. 1, ¶¶ 58-65.)

This plan differed from the plan Petitioner had provided at his initial bond hearing.  (*Id*., ¶ 66.)  His initial plan for rehabilitation only included a verbal confirmation from one rehabilitation center that was willing to complete an intake with Petitioner.  The initial plan did not include any additional services coordinated, planned or mentioned, and there was no plan for what would happen if that particular center did not believe Petitioner was the right fit or in need of their services or for how Petitioner would continue his rehabilitation after an initial inpatient rehabilitation program.  The initial plan did not include any plan for Petitioner to receive mental health services.  (*Id*.)

In his renewed plan, Petitioner provided twenty-two declarations and letters from his close friends and family offering to assist Petitioner in concrete ways.  (*Id*., ¶ 67; Dkt. 11 (Declaration of Frances Kreimer), ¶ 49.)  His family members made new commitments to support him in his commitment to sobriety in several ways, including providing transportation, not having alcohol at family functions, and not having alcohol at home.  Petitioner's wife submitted a new declaration,

6

in which she stated: "I am willing to do whatever is necessary to ensure that [Petitioner] never drinks and drives again." (Dkt. 1, ¶ 67.)

Petitioner also submitted letters of support and signed petitions from the community, including members of his church and his "family accompaniment team" at First Congregational Church of Berkeley. (*Id.*, ¶ 68; Dkt. 11, ¶ 52.) Those individuals promised to draw on personal contacts to make sure that Petitioner has access to an Alcoholics Anonymous support group and a sponsor and to drive him to meetings if needed. (Dkt. 1. ¶ 68.) In contrast, Petitioner did not have such a robust social network and support team at his prior hearing. (*Id.*)

On September 24, 2018, DHS submitted its opposition to Petitioner's request for another bond hearing, which included only a printout of Petitioner's criminal history and the criminal court docket of Petitioner's assault conviction. (*Id.*, ¶ 69.)

On September 25, 2018, an IJ denied Petitioner's request for another hearing. (*Id.*, ¶¶ 4, 70.) The IJ's denial stated only that the court agreed with the reasons stated in opposition to the motion. (*Id.*, ¶ 70.)

On October 25, 2018, Petitioner appealed the IJ's order denying his motion for a new bond hearing. (*Id.*, ¶ 71.) In response, the IJ issued a memorandum providing his conclusions on Petitioner's motion for a new bond hearing. The IJ stated: "evidence that [Petitioner] has sought treatment for his drinking problem, a year of additional sobriety and a release and rehabilitation plan are not a material change in circumstances that warrant another custody hearing." (*Id.*) The IJ noted that Petitioner had three convictions for DUI, that Petitioner's family members were in the car during one of these incidents, and that Petitioner's "most recent arrest occurred while he was still completing his court ordered alcohol treatment." (*Id.*)

Petitioner appealed the IJ's denial of his request for a bond hearing and filed his appeal brief with the BIA on November 28, 2018. (*Id.*, ¶¶ 14, 72.) In light of this Court's Order on Petitioner's motion for a temporary restraining order requiring the IJ to reconsider Petitioner's motion for a second bond hearing, the BIA dismissed Petitioner's appeal as moot. (Dkt. 30-2.)

E. **Petitioner's Irreparable Harm Allegations.**

Petitioner alleges that he would suffer irreparable harm if he were required to exhaust his

7

administrative remedy because each day he remains in detention without a bond hearing is unlawful and causes him harm that cannot be repaired. (Dkt. 1, ¶ 13.) He further alleges that he will suffer psychological and emotional conditions that are exacerbated by his detention. (*Id*., ¶ 15.) He has been diagnosed with major depression, panic disorder, post traumatic stress disorder ("PTSD"). His symptoms from these conditions are exacerbated by his detention. He also suffers from chronic back pain, which at times is debilitating. The conditions of his incarceration exacerbate his back pain. (*Id*., ¶ 15.) Petitioner does not get adequate medical treatment while in detention. (*Id*.) Petitioner also recently discovered that his brother is entering hospice treatment for cancer. (*Id*., ¶ 16.) Petitioner is missing the last days of his brother's life because Petitioner is in detention. (*Id*.)

Petitioner's family is also suffering from his detention. (*Id*., ¶ 16.) His wife and daughter have both been diagnosed with PTSD and depression, and his daughter suffers from panic disorder as well. (*Id*.) The symptoms of these conditions are greatly exacerbated by Petitioner's detention. (*Id*.)

### F. The IJ's Decision Upon Reconsideration.

On January 8, 2019, upon the Order from this Court, an IJ again found that Petitioner did not demonstrate that his circumstances had changed materially and denied his request for another bond hearing. (Dkt. 25-2.) The IJ noted that Petitioner had submitted the following:

> evidence of a detailed and substantive post-release plan, which includes a commitment to enter into an in-patient rehabilitation program and to receive various ongoing support and treatment. . . . Additionally, [Petitioner] submitted an updated declaration in which he accepts responsibility for his past criminal actions, acknowledges that he has an alcohol use disorder, and expresses his desire to pursue long-term mental health treatment to remain sober. . . . [Petitioner] also submitted a certificate of completion of phase one of the DUECE program, an alcohol treatment class located at the Contra Costa County West County Detention Facility, and noted his participation in Men and Women of Purpose, an alcohol support group . . .

(Dkt. 25-2 (internal citations omitted).)

The IJ stated that she weighed all of the evidence in the bond record, including Petitioner's "evidence of rehabilitation, a post-release plan, family and community support, and the reduction in [his] 2008 assault conviction" and determined that Petitioner failed to establish that there had

8

been a material change in his circumstances. (*Id.*) The IJ reasoned as follows:

> [Petitioner] asserts he now understands he has a drinking problem, is committed to remaining sober, and will do so through the support of his family, friends, treatment programs, and support groups. . . . However, during the September 14, 2017, hearing, [Petitioner] already acknowledged that he had an alcohol problem from the years 2010 to 2016 and stated that he did not have an intention to continue drinking. Thus, although [Petitioner] has now more emphatically acknowledged his alcohol problem and commitment to sobriety, it does not appear to be a materially-changed circumstance.
>
> [Petitioner] also submitted evidence that he completed the first phase of the DEUCE alcohol treatment classes and learned effective stress coping mechanisms to avoid alcohol consumption. . . . However, the Court continues to have serious concerns about [Petitioner]'s criminal history and whether he remains a danger to the community. During his first DUI, [Petitioner]'s cousin was in the car with him when he drove while intoxicated. Even more concerning, during his second DUI, his wife and minor children were in the car while [Petitioner] drove after consuming four shots and three beers. Finally, his third DUI occurred while he was attending court-ordered alcohol rehabilitation classes, where he learned he should not drive while under the influence. The Court remains troubled by [Petitioner]'s criminal history and finds that his knowledge of healthier coping mechanisms, participation in treatment classes and groups, post-release plan, additional time since his last DUI conviction, and community support, do not sufficiently mitigate his dangerousness to the community.
>
> Moreover, although evidence of the reduction of [Petitioner]'s assault conviction, eligibility for non-permanent resident cancellation of removal, and remand of his case from the Ninth Circuit may affect the Court's analysis of Respondent's flight risk, it does not affect the Court's analysis of his dangerousness. As such, the Court finds that this evidence does not support a material change in [Petitioner]'s dangerousness to the community to warrant a new bond hearing. . . .
>
> . . . . [G]iven the seriousness of [Petitioner]'s criminal history – his multiple DUI's were close in temporal proximity, his family members were in the car during his first and second DUI's, and his last DUI occurred while he was completing court-ordered rehabilitation classes – after weighing all the evidence in the record, the Court still finds that [Petitioner]'s evidence does not mitigate his criminal history.

(*Id.*)

## ANALYSIS

**A.     Temporary Restraining Order Standard.**

The standard for issuing a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush &*

9

*Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A preliminary injunction is an "extraordinary remedy." *Winter v. Nat. Res. Defense Council*, 555 U.S. 7, 24 (2008). In order to obtain a preliminary injunction a plaintiff must establish (1) "that he is likely to succeed on the merits," (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in his favor," and (4) "that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Alternatively, "if a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (internal citation and quotation marks omitted). A "serious question" is one on which the movant "has a fair chance of success on the merits." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984) (internal citation omitted). Under the Ninth Circuit's "sliding scale" approach, "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012) (citations omitted).

Additionally, where, as here, Petitioner seeks affirmative relief that would alter the status quo, "courts should be extremely cautious." *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1319 (9th Cir. 1994).

**B.   Likelihood of Success on Merits on Habeas Petition.**

Habeas corpus relief is appropriate when a person "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). The Immigration and Nationality Act ("INA") provides a "complex statutory framework of detention authority" codified at 8 U.S.C. §§ 1226 and 1231. *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008). Where a noncitizen falls within the statutory scheme "can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Id.*

Petitioner is being detained under 8 U.S.C. § 1226(a). Pursuant to that provision, "an alien

may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a).  "After an alien is detained, the DHS district director makes an initial custody determination and may allow the alien's release on bond. *Prieto-Romero*, 534 F.3d at 1058 (citing 8 C.F.R. § 236.1(d)).  If, where here, an alien is denied bond, he may request another bond hearing "upon a showing that the alien's circumstances have materially changed since the prior bond determination." 8 C.F.R. § 1003.19(e).

The Attorney General has discretionary judgment under 8 U.S.C. § 1226, and that judgment is not subject to judicial review.  8 U.S.C. § 1226(e); *see also Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018) (Section 1226(e) "precludes an alien from challenging a discretionary judgment by the Attorney General or a decision that the Attorney General has made regarding his detention or release.") (quotation marks and citation omitted).  However, section 1226(e) "does not strip a district court of its traditional habeas jurisdiction, 'bar constitutional challenge[s]' or preclude a district court from addressing a habeas petition 'challeng[ing] the statutory framework that permits [the petitioner's] detention without bail.'" *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011) (quoting *Demore v. Kim*, 538 U.S. 510, 516-17 (2003).  Thus, courts retain "habeas jurisdiction over constitutional claims or questions of law." *Singh*, 638 F.3d at 1202.

### 1.     Bond Hearing Based on Materially Changed Circumstances.

Here, Petitioner argues that the IJ violated the law and his right to due process in denying him the opportunity to have a subsequent bond hearing.  Pursuant to 8 C.F.R. § 1003.19(e), Petitioner may obtain a new bond hearing upon a showing that his "circumstances have materially changed since the prior bond determination." 8 C.F.R. § 1003.19(e).  The Court has jurisdiction to review the IJ's discretionary bond denial only "where that bond denial is challenged as legally erroneous or unconstitutional." *Kharis v. Sessions*, 2018 WL 5809432, *4 (N.D. Cal. November 6, 2018).  "[A] district court has jurisdiction to review mixed questions of law and fact," but "it must be careful not to encroach upon 'the IJ's discretionary weighing of the evidence.'" *Id*. at *5 (quoting *Slim v. Nielson*, 2018 WL 4110551, at *4 (N.D. Cal. Aug. 29, 2018)).  "Petitioner may not create the jurisdiction that Congress chose to remove simply by cloaking an abuse of discretion argument in constitutional garb." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1271 (9th

11

Cir. 2001.) Nevertheless, courts are not barred from concluding that the evidence before the IJ failed, as a matter of law, to prove the requisite showing. *Kharis*, 2018 WL 5809432, *5; *see also Slim*, 2018 WL 4110551, * 4-5 (distinguishing between an unreviewable challenge to the IJ's discretionary weighing of factors and a permissible challenge to the "quantum of evidence supporting the IJ's conclusion."). Here, the issue is whether the IJ failed as a matter of law in determining that Petitioner did not show that his circumstances had materially changed.

Additionally, where it appears as though the IJ misinterpreted or failed to consider probative evidence, the Court may review such errors under its habeas review. *See Ramos v. Sessions*, 293 F. Supp. 3d 1021, 1033 (N.D. Cal. 2018) (finding "IJ legally erred because she did not fully consider the evidence before her," including that the petitioner demonstrated significant changed circumstances such as meaningful rehabilitation as shown by letters from community members, petitioner's testimony showing dedication to sobriety, and by entering DUI therapy which differed meaningfully from previous therapy); *Obregon v. Sessions*, 2017 WL 1407889, *7 (N.D. Cal. April 20, 2017) (finding legal error where IJ misrepresented some of the petitioners evidence, failed to "engage with any of the details" with the petitioner's prior DUIs, and failed to address the steps the petitioner took to get effective treatment).

After Petitioner's initial bond hearing in September 2017, the IJ found that Petitioner was a danger to the community based on his "recent and repeated criminal history involving alcohol" and Petitioner's "equivocal sworn testimony regarding whether he needs help and intends to stop drinking." (Dkt. 1, ¶ 39; Dkt. 11-1.) The IJ also noted that Dr. Susan Wilde testified as an expert that she (Dr. Wilde) believed Petitioner has a problem with alcohol and was amenable to rehabilitation if he entered an appropriate program. (Dkt. 1, ¶ 39; Dkt. 11-1.)

Upon reconsideration, the IJ again found that Petitioner failed to establish that there had been a material change in his circumstances. (Dkt. 25-2.) The Court finds that the IJ erred in making this determination. The IJ misrepresented some of Petitioner's evidence and failed to consider other significant evidence. The IJ stated that Petitioner acknowledged at his initial hearing that he had an alcohol problem and stated an intent to abstain from alcohol. Therefore, the IJ described Petitioner's current acknowledgement and commitment to sobriety as merely more

12

"emphatic," but not materially different. (Dkt 25-2.) However, the IJ misrepresented Petitioner's testimony at his initial hearing. The IJ from the initial bond hearing described Petitioner's sworn testimony regarding whether he needed help and intended to stop drinking as "equivocal." (Dkt. 11-1.) In his current declaration, Petitioner unequivocally acknowledges that he has a problem with alcohol and is deeply committed to abstaining from alcohol and to engaging in comprehensive treatment. This testimony is not only more "emphatic" but significantly differs from his prior testimony. In light of the fact that the IJs relied on Petitioner's criminal convictions for DUIs to find him a current danger to society, his new, unequivocal commitment to sobriety is a critical piece of evidence of change.

Additionally, the IJ failed to address other significant evidence. Petitioner submitted an updated psychological evaluation in which Dr. Wilde found that Petitioner had been free from alcohol for many months, had already gone through withdrawal, and had developed an ability to deal with stressful circumstances without alcohol. At most, the IJ just briefly alluded to this evidence when she stated that Petitioner's "knowledge of healthier coping mechanisms," among other factors, did "not sufficiently mitigate his dangerousness to the community." (Dkt. 25-2.) Again, this type of evidence is probative regarding whether Petitioner would be successful at remaining sober and thus not driving while under the influence of alcohol.

The IJ also failed to address the increasing remoteness of his last DUI conviction. Notably, the IJ at the first hearing found that the recency of Petitioner's convictions for DUI contributed to her finding of dangerousness. She concluded that Petitioner's "recent and repeated criminal history involving alcohol" showed that he was a current danger to the community. (Dkt. 11-1.) At the time of his initial bond hearing, Petitioner's last arrest for DUI was only 6 months before the hearing. However, the amount of time since his last arrest for DUI has now *doubled* to 32 months. Nevertheless, the IJ just briefly referenced the "additional time since his last DUI conviction" in a list of factors that the she considered insufficient to "mitigate [Petitioner's] dangerousness to the community." (Dkt. 25-2.) As the Ninth Circuit has made clear, "the recency and severity of the offenses must be considered" when determining dangerousness. *Singh*, 638 F. 3d at 1206; *see also Obregon*, 2017 WL 1407889, * 7 ("courts must consider the remoteness of

the DUI and intervening events that might undermine a finding of dangerousness."). Therefore, the failure to the IJ to substantively address this evidence is material.

Moreover, with the exception of Petitioner's own testimony, the IJ addressed the ultimate legal issue – whether Petitioner is a current danger to society – as opposed to whether Petitioner demonstrated that his circumstances had materially changed to warrant a second bond hearing. The IJ discounted Petitioner's evidence regarding his learning healthier coping mechanisms, participation in rehabilitation programs, development of a comprehensive post-release plan, and additional time since his last DUI conviction because they did not "sufficiently mitigate his dangerousness to the community." (Dkt. 25-2.) The IJ did not address whether any of this evidence demonstrated a material change in Petitioner's circumstances. The IJ, thus, applied the incorrect legal standard.

Furthermore, the Court finds that when all of Petitioner's evidence is considered, Petitioner has demonstrated, as a matter of law, that his circumstances materially changed since his initial bond hearing. *See Kharis*, 2018 WL 5809432, \*5 (courts are not barred from concluding that the evidence before the IJ failed, as a matter of law, to prove the requisite showing); *see also Slim*, 2018 WL 4110551, \* 4-5 (distinguishing between an unreviewable challenge to the IJ's discretionary weighing of factors and a permissible challenge to the "quantum of evidence supporting the IJ's conclusion."). Here, Petitioner submitted substantial evidence demonstrating that his circumstances changed in significant ways. In addition to his new, unequivocal acceptance of his problem with alcohol and commitment to sobriety, his updated psychological evaluation, and the increasing remoteness of his last arrest for DUI, Petitioner completed the first phase of a DUI program that a psychologist testified was "excellent" (in contrast to his previous "ineffective" program), committed and developed a plan to enter an inpatient rehabilitation program *and* to pursue long-term mental health treatment upon his release, and garnered robust, committed family and community support for his sobriety and mental health which was absent at his first hearing. (Dkt. 1, ¶¶ 55-68.) The Court does not find error with the IJ's discretionary weighing of factors. Instead, the Court concludes that the evidence in the record simply does not support the IJ's conclusion that Petitioner's circumstances have not changed materially.

14

As noted in the order on Petitioner's first motion for a temporary restraining order, the Court need not determine, and does not hold, that the Petitioner's evidence shows that he is not dangerous. The issue before the Court is whether the IJ erred in finding that Petitioner failed to show that his circumstances had materially changed. On that issue, the Court finds that the IJ erred as a matter of law.

**2.     Bond Hearing Required by Due Process.**

If due process requires a second bond hearing, the government would bear the burden to prove Petitioner's dangerousness by clear and convincing evidence at that hearing. *See Singh v. Holder*, 638 F.3d 1196, 1200 (9th Cir. 2011) (holding that "given the substantial liberty interests at stake in [bond] hearings, the government must prove by clear and convincing evidence that continued detention is justified"). District courts have held that *Jennings* did not address and thus did not reverse *Singh* on this Constitutional due process issue. *See also Pensamiento v. McDonald*, 315 F. Supp. 3d 684, 689 (D. Mass. 2018); *Cortez v. Sessions*, 2018 WL 1510187, at *9 (N.D. Cal. Mar. 27, 2018); *see also Gonzalez v. Bonnar*, 2019 WL 330906, at *6 (N.D. Cal. Jan. 25, 2019) ("It has long been the rule in this and other circuits that because immigration detention is civil rather than criminal in nature, as in other instances of civil confinement, the burden is on the government to justify detention by clear and convincing evidence.") (citing *Singh*, 638 F.3d at 1204).

The Supreme Court in *Jennings* made clear that Petitioner is not statutorily entitled to periodic bond hearings under 8 U.S.C. 1226(a), but the Supreme Court did not address whether Fifth Amendment's Due Process Clause of the Constitution requires additional bond hearings at six-month intervals. In the absence of binding authority establishing a "categorical right to a periodic bond hearing, the Court must conduct an individualized due process analysis pursuant to the conventional *Mathews v. Eldridge*, 424 U.S. 319 (1976) factors." *Soto v. Sessions*, 2018 WL 3619727, * (N.D. Cal. July 30, 2018); *see also Viramontes-Gomez v. Nielsen*, 2018 WL 6111015, at *4 (W.D. Wash. Oct. 18, 2018) (applying *Mathews* test to determine if due process required a bond hearing).

The Fifth Amendment's Due Process Clause forbids the Government to "depriv[e]" any

"person . . . of . . . liberty . . . without due process of law."  "Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334.  To determine the requirements of due process, courts consider (1) the private interest affected, (2) the government's interest, and (3) the value added by alternative procedural safeguards to what has already been provided in the particular situation before the court.  *See id.* at 334-35.

### i.  Petitioner's Private Interest.

Petitioner's freedom from detention is at stake.  "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that Clause protects." *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  "[L]iberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Rodriguez v. Marin*, 909 F. 3d 252, 256-57 (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)).

Petitioner has now been detained for twenty-two months, and his last bond hearing was sixteen months ago.  Petitioner argues that his detention is "prolonged" and thus requires another bond hearing.  The Ninth Circuit had held under the cannon of constitutional avoidance, that 8 U.S.C. § 1226(a) required periodic bond hearings every six months to avoid constitutional concerns that arise from prolonged detention.  *Rodriguez v. Robbins*, 804 F.3d 1060, 1074 (9th Cir. 2015).  However, the Supreme Court recently reversed *Rodriguez* on the grounds that the Ninth Circuit erred in applying the cannon of constitutional avoidance because its interpretation of the statute was implausible.  *Jennings*, 138 S. Ct. at 842.  The Supreme Court did not preclude the Ninth Circuit from finding that due process, as opposed to the statute, requires periodic bond hearings, *id*. at 851, but the Ninth Circuit has yet to make that finding.  The Court need not speculate as to what the Ninth Circuit would consider "prolonged detention" under the Due Process Clause and whether it would hold that a certain length of detention, standing alone, would require an additional bond hearing.  It is sufficient for purposes of this motion to find that the length of Petitioner's detention has been sufficiently long to establish a strong private interest.

### ii.  Government Interest.

At his initial bond hearing, the IJ concluded that Petitioner was a danger to the community.  "Although the government has valid interests in detaining individuals that pose a danger to the

16

1   community, the Supreme Court has 'upheld preventive detention based on dangerousness only
2   when limited to specially dangerous individuals and subject to strong procedural protections.'"
3   *Obregon*, 2017 WL 1407889, *6 (quoting *Zadvydas*, 533 U.S. at 691).

4   An IJ may consider an alien's "criminal record, including the extensiveness of criminal
5   activity, the recency of such activity, and the seriousness of the offenses." *See Matter of Guerra*,
6   24 I&N Dec. 37, 40 (BIA 2006). However, the "court must consider the remoteness of the DUI
7   and intervening events that might undermine a finding of dangerousness." *Obregon*, 2017 WL
8   1407889, *7; *see also Singh*, 638 F.3d at 1206 ("recency and severity of the offenses must be
9   considered"). "[W]hen it comes to non-violent crimes, especially those caused by addiction," the
10  court in *Obregon* noted that "the passage of time does make a difference, as does the availability
11  of treatment options." *Obregon*, 2017 WL 1407889, at *8. Therefore, "[i]t violates due process to
12  keep someone in immigration detention for more than a year on the basis of dangerousness where
13  the overriding reason is that a non-violent crime was committed as a result of that person's
14  addiction and the individual has a viable plan for rehabilitation and compliance with pertinent
15  conditions of release." *Obregon*, 2017 WL 1407889, at *8; *see also Ramos v. Sessions*, 2018 WL
16  905922, at *5 (N.D. Cal. Feb. 15, 2018) (same).

17  Additionally, the Court notes that the governmental issue at stake in this motion is the
18  ability to detain Petitioner *without providing him with another bond hearing*, not whether the
19  government may continue to detain him. Petitioner proffers that the cost of conducting a bond
20  hearing, to determine whether the continued detention of Petitioner is justified, is minimal. (Dkt.
21  10 at 21.) Respondents to do not affirmatively contest this point. Moreover, as the Court noted in
22  its previous order, the government has an interest in allowing the IJ, who has the clearest access to
23  the facts and witnesses, to assess credibility and adjudge issues within the context of immigration.
24  However, requiring the government to provide Petitioner with another bond hearing does not
25  significantly undermine the government's interest in evaluating the evidence and in making those
26  credibility determinations. If the Court requires the government to provide the Petitioner with
27  another hearing, the IJ would still be the trier of fact at any such hearing.

28  Considering the additional remoteness of Petitioner's DUI convictions, the minimal cost of

conducting a bond hearing, and the ability of the IJ to adjudicate the ultimate legal issue as to whether Petitioner's continued detention is justified, the Court concludes that the government's interest is not as weighty as Petitioner's.

### iii. Value of Additional Safeguards.

The Court finds that that value of additional safeguards from an additional bond hearing is high. As noted above, the last bond hearing was in September 2017, over sixteen months ago, but Petitioner's circumstances have changed materially since then. Petitioner's only felony conviction was changed to a misdemeanor, and the time since his last arrest for DUI has *doubled* to thirty-two months since his initial bond hearing. Since that time, as described in more detail above, Petitioner has been sober, acknowledged his problem with alcohol and committed to sobriety, participated in more effective counselling, developed a comprehensive plan upon his release, and garnered robust assistance from family and community members who have committed to concrete actions to support Petitioner's sobriety and mental health. These facts show that an additional bond hearing provide additional safeguards under these circumstances.

\* \* \*

Accordingly, due process under the *Mathews* test requires Respondents to provide Petitioner another bond hearing. The Court notes that it is *not* making a finding that the mere passage of time requires a second bond hearing. The material change in circumstances coupled with the passage of time are the factors requiring an additional bond hearing to satisfy due process. Therefore, the Court finds that Petitioner has demonstrated likelihood of success on the merits on his habeas petition.

**C.    Irreparable Harm**

Petitioner argues that he is suffering irreparable harm, caused by the unlawful detention. In his reply brief, Petitioner makes the additional argument that he would suffer irreparable harm if his brother dies before he is released or is given a full opportunity to present his evidence at a bond hearing to demonstrate he should be released. (Dkt. 12 (Declaration of Raul Lopez Reyes), ¶ 11 ("[M]y brother is extremely sick and could die in a matter of days or weeks and has entered hospice. . . . My brothers and sisters and I are very close, and it makes me extremely sad to know

that he could die any day and I may not be able to see him to say goodbye.").) He further argues, with respect to irreparable harm, that detention will further harm his mental and physical health, as well as the mental health of his family. Additionally, detention is negatively affecting his ability to prepare for his immigration case. *See Cortez v. Sessions*, 318 F. Supp. 3d 1134, 1138-39 (N.D. Cal. 2018) (noting that detention creates substantial challenges in preparing for a merits hearing on immigration status).

Although Petitioner has alleged harms that are essentially inherent in detention, his argument is that his detention is no longer justified. If Petitioner can demonstrate that he is not a current danger to society, then every day he remains in custody without an opportunity to make this showing at a bond hearing causes him irreparable harm.

**D.      Balance of Equities.**

After weighing all these factors, the Court finds that the balance of equities weighs in favor of a temporary restraining order to require the government to provide Petitioner with another bond hearing.

**E.      Remedy.**

Having concluded that the IJ legally erred in finding that Petitioner's circumstances had not changed materially and that due process requires an additional bond hearing, the Court must determine what relief is due. Although Petitioner requests immediate release, the Court finds that his motion supports only another bond hearing. It is not the Court's province to determine in the first instance, especially on a motion for a temporary restraining order, whether Petitioner is a danger to the community. Therefore, the Court orders that Respondents provide Petitioner with a bond hearing within fifteen days.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Petitioner's motion for a temporary restraining order and REQUIRES Respondents to provide Petitioner with another bond hearing

///

///

///

1  within fifteen days or release Petitioner.  The Court DENIES all other forms of requested relief at
2  this time.
3  **IT IS SO ORDERED**.
4  Dated: January 29, 2019



SALLIE KIM
United States Magistrate Judge